IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ESPERANZA AVIATION 2007-SKY KING, LLC, a Delaware limited liability company, ) ) ) ) | |
| Plaintiff, ) | No. 09 C 5086 |
| v. ) | Judge Guzman |
| ) | |
| CITY SKIES, INC., a Nevada corporation and ROLLINS AIR, a foreign corporation, ) ) | Magistrate Judge Cole |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

### BACKGROUND OF THE LITIGATION

The plaintiff is the owner of a 1984 Boeing 737-232 aircraft (serial no. 23104) and formerly bearing United States registration mark N332DL. On August 26, 2008, Plaintiff became the owner of the Aircraft, which it purchased from Wilmington Trust Company. (*See* Plaintiff's Memorandum in Support of Motion for Preliminary Injunction, Ex. A, Affidavit of Steven E. Trabish) ("Memorandum"). Simultaneously with the filing of the Aircraft Bill of Sale, Plaintiff filed an Aircraft Registration Application (FAA Form 8050-I) that effectuated a change in registration from its previous owner to Plaintiff. (Memorandum, Ex. 2 to Ex. A). Plaintiff assumed title to the Aircraft on August 26, 2008, at which time the Aircraft was being leased to Sky King, Inc. pursuant to a lease agreement of August 16. 2006. As a consequence of various defaults under the lease by Sky King, Plaintiff repossessed the Aircraft.

Thereafter, Plaintiff leased the Aircraft to Defendant, City Skies, Inc., pursuant to an Aircraft Lease Agreement (the "Lease") dated September 2008. (Memorandum, Ex. 3 to Ex. A). The Lease

provided that it was to be governed by New York law and contained the following provisions, which the Plaintiff has specified in its Memorandum as relevant to the Motion for Preliminary Injunction:

1. Title to the Aircraft would remain vested in Plaintiff (Section 8.1);

2. City Skies would not allow the Aircraft to become or remain subject to any other international interest (Section 8.2(c));

3. City Skies would not use or operate the Aircraft in violation of any law, including any airworthiness certificate or registration relating to the Aircraft (Section 8.5);

4. City Skies will not operate or use the Aircraft in any area excluded from its insurance coverage (Section 8.6);

5. City Skies will not sell, sublease or otherwise deliver, transfer or relinquish possession of the Aircraft without Plaintiff's prior written consent (Section 9);

6. City Skies will not assign any of its rights under this Lease without Plaintiff's prior written consent (Section 15);

7. Upon default of any term of the Lease, City Skies will promptly return the Aircraft to Plaintiff at such location in the United States as requested by Fsperanza (Section 18); and

8. City Skies waived any objection to the jurisdiction and venue of any suit filed in the State of Illinois for any action or proceeding arising out of or relating to the Lease. (Section 24.4(c)).

Memorandum at 2.

On September 30, 2008, in violation of the Lease and without the knowledge or authority of Plaintiff, City Skies purported to sell the Aircraft to Defendant, Rollins Air. (Exhibit A at 5). The aircraft bill of sale reflected Plaintiff as the seller of the plane and purportedly showed initials, which are difficult to decipher, of a "Manager" of Esperanza. The Plaintiff's affidavits in support of the Motion for Preliminary Injunction claim that the signature is a forgery. (Memorandum, Ex. 4 to Ex.

A). On July 7, 2009, there was a request to deregister the Aircraft with the FAA signed by Rollins. (Id.; Exhibit 5 to Ex. A).

On July 10, 2009, the FAA issued a deregistration of the Aircraft. (Ex. 6 to Ex. A). The Aircraft was subsequently reassigned a Honduras registration. (Ex. A, ¶6). Rollins, after receiving the fraudulent transfer of title, skipped the FAA required critical step of providing an Export Certificate of Airworthiness and registering the Aircraft on the Honduras Registry and then flew the Aircraft for maintenance to Coopesa, a maintenance facility in Costa Rica. (¶¶6-7). The Aircraft has numerous safety defects that require repair. (Id.). The Aircraft is currently not airworthy and has numerous safety defects that are in need of immediate repair. (Id.). The aircraft was scheduled for departure to Honduras on August 19th, notwithstanding the fact that it was not airworthy, and that it appeared that it would be used in Honduras for passenger traffic. (Id. at ¶¶ 6-8).

On August 18, 2009, the Plaintiff filed the instant action. (Memorandum, Ex. B). Jurisdiction was based on diversity of citizenship, and the complaint alleged that both defendants were doing business in the Northern District of Illinois. Venue was alleged to be appropriate in this district because some of the events giving rise to the claims for conversion (Count I), common law fraud (Count II), and breach of contract against City Skies (Count III) occurred here. On August 18th, Judge Lefkow entered a temporary restraining order concluding that the plaintiff had shown a likelihood of success on the merits of its right to possession of the aircraft, that it had no adequate remedy at law, and that it will be irreparably harmed if an injunction is not entered because the aircraft is expected to be moved without lawful authority to Honduras, and that the public interest supports the issuance of an injunction because the aircraft if not airworthy and cannot be permitted to fly under FAA regulations. (Memorandum, Ex. C). The TRO, which was to expire on August

28th at 4:00 p.m, provided that Defendants cannot take possession of the subject Aircraft and Defendants cannot operate the subject Aircraft without permission of the Court. *Id.*

On August 25, 2009, Judge Guzman extended the TRO to September 17, 2009. Judge Guzman made the same findings that Judge Lefkow made. (Memorandum, Ex. D). Thereafter, Judge Guzman entered a minute order correcting what was an obvious typographical error in the expiration of the TRO from September 17 to September 14. [#9].

Both TROs were entered without participation by either defendant, although notice of the motion to extend the TRO was provided to them. [#11-12]. The defendants have been served with notice of the motion for preliminary injunction [#21, 24], but have chosen not to participate in the briefing or otherwise.

## ANALYSIS

"We begin with the basics. A preliminary injunction is an 'extraordinary and drastic remedy.' It is never awarded as of right. Rather, a party seeking a preliminary injunction must demonstrate, (1) a likelihood of success on the merits; (2) a lack of an adequate remedy at law; and (3) an irreparable harm will result if the injunction is not granted." *Munaf v. Geren,* --- U.S. ----, 128 S.Ct. 2207, 2219 (2008) (citations omitted). *See also Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 340 (1999)(" 'reasonable probability of success' "); *Duthie v. Matria Healthcare, Inc.,* 540 F.3d 533, 536-37 (7th Cir.2008); *Digrugilliers v. Consolidated City of Indianapolis,* 506 F.3d 612, 618 (7th Cir.2007)(movant need only show that claim has "at least some merit"). Injunctive relief should not be granted unless the movant, by a "clear showing," carries the burden of persuasion. *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997); *Christian Legal Society v. Walker,* 453 F.3d 853, 870 (7th Cir.2006). " 'If a plaintiff seeking a preliminary injunction cannot

show that his chance of prevailing on the merits is better than negligible,' a court must deny the injunction regardless of how heavily any other equities may weigh in the plaintiff's favor.' " *D. Patrick, Inc. v. Ford Motor Co.,* 8 F.3d 455, 458 (7th Cir.1993). If the moving party meets the first three requirements, then the district court balances the relative harms that could be caused to either party. *Hicks v. Miranda,* 422 U.S. 332, 353 (1975); *Digrugilliers,* 506 F.3d at 618.[1]

We turn then to the adequacy of the showing made by the Plaintiff in support of the Motion for Preliminary Injunction. The Plaintiff has a clearly ascertainable right that needs protection. Plaintiff is the sole owner of the Aircraft, and Rollins' assertion of ownership of the aircraft has been achieved through a forgery and a broader scheme to fraud by City Skies and Rollins – if the allegations in Mr. Trabish's affidavit are true, and at this point they are unrebutted. As the owner of the aircraft and under the lease terms, Plaintiff is entitled to the immediate return of the aircraft.

Given the unrebutted facts, Esperanza has a better than negligible chance of prevailing on the merits.

The next inquiry is perhaps not quite so free from doubt. It is whether there is an adequate remedy at law. The plaintiff's Memorandum simply asserts that "[m]oney damages are inadequate

---

[1] The plaintiff argues that the standards for issuance of a TRO are the same as those that govern applications for preliminary injunction and therefore the issuance of the TRO by Judge Lefkow and its extension by Judge Guzman settles the matter. The argument goes too far. Although it does not say so in words, the argument in essence would make the prior rulings dispositive under the law of the case doctrine. The doctrine holds that a court generally should not reopen issues decided in earlier stages of the same litigation. *Agostini v. Felton,* 521 U.S. 203, 236 1997). Reflecting as it does interests in consistency, finality, and the husbanding of judicial resources, the doctrine applies even when a case is reassigned from one judge to another. *Minch v. City of Chicago,* 486 F.3d 294, 301 (7th Cir.2007). Nonetheless, the doctrine is not inflexible and is not a limit on judicial power. *Messenger v. Anderson,* 225 U.S. 436, 444 (1912)(Holmes, J.); *United States v. Harris,* 531 F.3d 507, 513 (7th Cir.2008). The doctrine seldom, if ever, applies to rulings on application for pretrial injunctive relief. *Cf. Berrigan v. Sigler,* 499 F.2d 514, 518 (D.C.Cir.1974); *Bloomington Partners, LLC v. City of Bloomington,* 2006 WL 2578916 (C.D.Ill.2006).

here because Esperanza is legally entitled to possession of the aircraft, *id.* at 5, and that if the plane is moved to Honduras it is unlikely that it will be recovered. While that all that may be true, it does not answer the question of whether in the event the plane cannot be recovered, money damages would not be an adequate remedy. An aircraft, like any other tangible property, has an ascertainable monetary value. Indeed, the Aircraft Lease Agreement, itself, provides for a "Stipulated Loss Value" for the plane at $2 million. (Memorandum, Ex. 3, ¶1.53 and Sch. 1 thereto). Since the parties have placed a value on the plane in the event of a loss, it cannot be argued that there is an inadequate remedy at law merely because the plane may find its way to Honduras and put beyond the reach of the plaintiff.

Perhaps a slightly stronger argument is that it would be difficult, if not impossible, to collect any money judgment against City Skies and Rollins. As to the latter, that may be true since Rollins is a foreign corporation,[2] although it does business in this district according to ¶3 of the Complaint and thus may have property here, although it cannot be ascertained one way or another from the Plaintiff's moving papers. As to City Skies' solvency, the moving papers say nothing. And so it cannot be said that difficulties in collecting judgment can be the basis for a determination that plaintiff lacks an adequate remedy at law.

Moreover, the claim of uncollectability essentially consists of unsupported statements in the Memorandum. But *ipse dixits* in briefs are not evidence and do not count. *See e.g., Woolard v. Woolard,* 547 F.3d 755 (7th Cir. 2008); *Campania Mgmt. Co. v. Rooks, Pitts & Poust,* 290 F.3d 843, 853 (7th Cir.2002); *United States v. Stevens,* 500 F.3d 625, 62 -629 (7th Cir. 2007); *United States ex*

---

[2] The Plaintiff's service of its Memorandum in Support of Motion for Preliminary Injunction shows an address Rollins Air in La Ceiba, Honduras, C.A. [#24].

*rel. Feingold v. AdminiStar Federal, Inc.*, 324 F.3d 492, 494 (7th Cir. 2003).

If there were nothing more on the issue of inadequate remedy at law, the issuance of a preliminary injunction could well be in doubt. But there is more. Mr. Trabish's affidavit states that the aircraft is scheduled to be moved from Costa Rica to Honduras and that despite its "numerous safety defects" it will be utilized "for the purposes of flying passengers for hire." (Memorandum, Ex. A, ¶8). The safety violations are so numerous that the Aircraft is "currently not airworthy." *Id*. Given these pervasive defects, there looms the possibility that the Aircraft could crash, with loss of life and/or harm to persons or property. If that were to occur, the Plaintiff, as the actual owner, could be exposed to numerous law suits that could adversely affect its business reputation – a harm that cannot adequately be measured in monetary terms. Such suits could also result in costs and expenses that might not be covered by insurance or that might far exceed any coverage that may exist. In short, the Plaintiff has no adequate remedy at law.[3] It is for the same reasons that the plaintiff has demonstrated that it will suffer irreparable injury if preliminary injunctive relief is not granted.

Issuance of a preliminary injunction also is in the public interest since it will preclude risks to public safety by preventing an aircraft that is not airworthy from being used to fly passengers. The fact that those passengers may be Honduran citizens or other foreign nationals does not alter this conclusion. In any event, it cannot be said with any degree of certainty that American citizens might

---

[3] Plaintiff's reliance on *Sundance Land Corp, v. Community First Federal Sav. & Loan Ass'n.*, 840 F.2d 653, 661 (9th Cir. 1988) is misplaced. (Memorandum at 5). There, the Ninth Circuit concluded that the Plaintiff had no adequate remedy at law and that denial of injunctive relief would cause immediate irreparable harm because the case involved real property which was "unique." Thus, the claimed likelihood that Plaintiff will not be able to recover the Aircraft if it is moved to Honduras, even if true, does not compel the conclusion that the remedy at law is inadequate or that the Plaintiff will suffer irreparable harm. There is no claim in the complaint or in the papers in support of the Motion for Preliminary Injunction that there is anything "unique" about the Aircraft – other than the fact that it is not airworthy. But that is not the kind of uniqueness the Ninth Circuit had in mind in *Sundance Land Corp.*

not find themselves as passengers on the Aircraft.

The balancing of the harms clearly weighs in favor of granting the preliminary injunction. There is no harm to City Skies and Rollins if they are enjoined from preliminarily possessing and operating the Aircraft since they are not owners of the Aircraft, have no right to its continued possession, and most assuredly have no right to fly an Aircraft that appears to be riddled with violations and would constitute a danger to passengers and those on the ground who could be affected were the plane to crash.

The only question is whether a bond should be required and in what amount. Since the Plaintiff has not had an opportunity to speak to this issue, I make no recommendation on it. But absent some unusual circumstances, a bond should be required.

In sum, it is respectfully recommended that a Preliminary Injunction be issued that would prohibit the defendants from taking possession of the Aircraft, operating the Aircraft without court order, moving the Aircraft from Costa Rica to Honduras or anywhere else without court order, from making repairs to the Aircraft without court order and from flying the Aircraft until such time as the Court concludes that the Aircraft is airworthy under appropriate FAA standards.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 9/11/09

Any objections to the Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the Report and Recommendation. See Fed.R.Civ.P. 72(b); 28 U.S.C. 636(b)(1)(C); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 329 (7th Cir.1995).